**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TELEPATHY, INC.<br>P.O. Box 11077<br>Washington, D.C. 20008,<br><br>          Plaintiff,<br><br>v.<br><br>SDT INTERNATIONAL SA-NV<br>Boulevard de l'Humanité 415<br>1190 Brussels - Belgium,<br><br>          SERVE: SDT INTERNATIONAL<br>          SA-NV<br>          Boulevard de l'Humanité 415<br>          1190 Brussels - Belgium,<br><br>     Defendant. | Case no.    1:14-cv-1912 |

## VERIFIED COMPLAINT

Plaintiff, Telepathy, Inc., for its Verified Complaint against defendant SDT International

SA-NV alleges:

## NATURE OF THE SUIT

1.     This action seeks actual and/or statutory damages, attorney's fees and costs, a

declaration of the parties' rights, a finding of Plaintiff's lack of bad faith intent under the

Anticybersquatting Consumer Protection Act, and a finding that Defendant engaged in reverse

domain name hijacking under the Anticybersquatting Consumer Protection Act.

## PARTIES

2.     Telepathy, Inc. ("Telepathy" or "Plaintiff") is a corporation organized and

existing under the laws of Washington, D.C. with a principal business address of P.O. Box

11077, Washington, D.C. 20008.

3.      On information and belief, SDT International SA-NV ("Defendant") is a foreign corporation with its principal place of business at Boulevard de l'Humanité 415 - 1190 Brussels - Belgium.

## JURISDICTION AND VENUE

4.      This is a civil action arising under the Lanham Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended.  This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1338(a) (any act of Congress relating to patents, copyrights and trademarks); and pursuant to 28 U.S.C. § 1332 (diversity of citizenship) in that there is complete diversity of citizenship between Telepathy and the Defendant and the amount in controversy exceeds $75,000.00.

5.      Defendant engaged in negotiations and communications with Telepathy pursuing a business relationship with Telepathy prior to the actions giving rise to the claims against Defendant in this action, and the place of injury to Telepathy from Defendant's actions is within this District.  Defendant has purposely directed its activities at this District, including Defendant's threatening correspondence sent to Telepathy, such actions were intentional, expressly aimed at the District, and have caused harm to Telepathy in this District which Defendant knew or should have known would be suffered in this District.

6.      Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because the injury to Telepathy giving rise to the claims in this action occurred in this District and pursuant to 28 U.S.C. § 1391(c) because Defendant is subject to this Court's personal jurisdiction.

## FACTUAL BACKGROUND

### *Plaintiff and its Business*

7.      Telepathy is a DC-based e-commerce corporation that has been in business for 15 years.

2

8.      Telepathy often registers or acquires domain names, including apparently generic terms, common words, initialisms, acronyms, and short phrases, and uses the domain names to provide information to consumers on the Internet concerning the generic or plain-meaning connotation of the terms.  Where the terms have no generic or plain meaning, the domain names are typically used to provide an Internet search function or general information. Telepathy owns over 10,000 such domain names.

9.      By 2003, Telepathy owned hundreds of three-letter .com domain names and was actively seeking to acquire additional three-letter .com domain names.  As part of this effort, Telepathy researched the expiration dates of currently registered three-letter .com domains.  In March 2003, Telepathy became aware that the current registrant of SDT.com had not renewed the domain, the registration of SDT.com would likely soon be cancelled, and the domain would then become freely available to the public for re-registration on a first-come, first-served basis.

10.      Telepathy did not acquire the SDT.com domain name in July 2003 because a third-party was the first to register the domain name upon cancellation of the prior registration. Telepathy continued its pursuit of other three-letter .com domain names.

11.      In September 2006, Telepathy negotiated with the owner of the SDT.com domain name at that time for purchase of the domain name as one of a group of three-letter .com domain names.  Telepathy and the owner did not agree on the terms of sale and so Telepathy did not acquire the SDT.com domain name at that time.

12.      In October 2006, the SDT.com domain name was publicly listed for auction at an industry conference, the T.R.A.F.F.I.C. Domain Conference & Expo, but was not sold.

13.      Telepathy acquired the SDT.com domain name in November of 2006 together with other three-letter and/or generic domain names including, for example, IJV.com and

DiamondState.com.

14.     Telepathy acquired the domain names due to the inherent value of three-letter
and generic .com domain names.

15.     Since the date of Telepathy's acquisition of the SDT.com domain name in
November of 2006, the SDT.com domain name has been used to redirect visitors to
SearchFusion.com, which is a bona fide offering of services to Internet consumers.

16.     SearchFusion.com is an Internet search engine owned and operated by
Telepathy, which provides a clean and simple search function with no links from the initial
webpage.  SearchFusion is a registered trademark of Telepathy and is registered on the Principal
Register of the United States Patent and Trademark Office under incontestable Registration No.
3476486.

17.     Telepathy has never configured the SDT.com domain name to display a website
that suggests that the site is operated by or affiliated with Defendant.

18.     Telepathy has never configured the SDT.com domain name to display a website
with products or services related to "ultrasonic measurement technology" such as those products
provided by Defendant.

19.     Telepathy did not have at the time of registration, and does not now have, an
intent to divert consumers from Defendant's online location to a website that could harm
Defendant's goodwill represented by Defendant's trademark.

20.     At no time did Telepathy approach Defendant seeking to sell the SDT.com
domain name to Defendant.

21.     Telepathy owns no other SDT formative domain names.

22.     Since the date of Telepathy's acquisition of the SDT.com domain name in

November of 2006, the SDT.com domain name registration has at all times reflected accurate contact information identifying Telepathy as the owner of the domain name.

23.     Defendant is not the exclusive owner of the letter combination "SDT" throughout the world, nor is "SDT" exclusively associated with Defendant.

24.     A Google search for "SDT," excluding any reference to "ultrasound," produces over 16,000,000 results.

25.     Defendant's SDT trademark is not famous within the meaning of the Lanham Act and is not highly distinctive given that the trademark is comprised of merely a combination of three letters that is frequently used by third-parties around the world.

26.     Telepathy has been a respondent in six proceedings under the Uniform Domain Name Dispute Resolution Policy ("UDRP") involving three letter .com domain names. Telepathy prevailed in all six proceedings, and the respective UDRP panelists found that Telepathy's business practices did not infringe the rights of the complainants.  Telepathy has reasonably relied on these decisions to continue its business practice of registering and using three-letter .com domains.

27.     Telepathy had, and continues to have, reasonable grounds to believe that the registration and use of the SDT.com domain name was a fair use or otherwise lawful.

28.     Telepathy neither registered nor used the SDT.com domain name with bad faith intent to profit from the Defendant's trademark.

### ***Background on the Anticybersquatting Consumer Protection Act***

29.     The Anticybersquatting Consumer Protection Act (the "ACPA") was passed into law in 1999 to address the serious problem of cybersquatting, which is the registration, trafficking in, or use of a domain name with a bad faith intent to profit from a trademark that is

identical or confusingly similar to the domain name.

30.     Around the same time period, the Internet Corporation for Assigned Names and Numbers ("ICANN") promulgated the UDRP to provide an administrative remedy, dictated by contract, to also address cybersquatting.

31.     The ACPA was developed to address "'cybersquatters' or 'cyberpirates,' who abuse the rights of trademark holders by purposely and maliciously registering as a domain name the trademark name of another company to divert and confuse customers" (106 Cong. Rec., S10517).

32.     Similarly, the UDRP was developed to address the "deliberate, bad faith registration as domain names of well-known and other trademarks" (WIPO Final Report, Par. 23 (1999)).

33.     The ACPA and the UDRP include a requirement of bad faith.

"Good faith, innocent or negligent uses of a domain name that is identical or confusingly similar to another's mark or dilutive of a famous mark **are not covered by the legislation's prohibition**.  Thus, registering a domain name while unaware that the name is another's trademark would not be actionable."
106 Cong. Rec., S10518.

34.     When drafting the ACPA, Congress was concerned that overreaching cybersquatting claims could be asserted to take a domain name from a registrant that did not possess the bad faith specifically required under the ACPA and administrative policies such as the UDRP.   The Congressional Record for the ACPA is replete with specific examples of overreaching cybersquatting claims such as claims asserted against "two year old Veronica Sam's 'Little Veronica' website and 12 year old Chris 'Pokey' Van Allen's web page."   106 Cong. Rec., S9755.

35.     In light of the potential for such overreaching claims, Congress provided domain name owners with causes of action to determine that they have not violated the ACPA, and to award damages, attorney's fees, and injunctive relief in cases of reverse domain name hijacking.

36.     Similar to the ACPA, the UDRP also provides for findings of reverse domain name hijacking where "the complaint was brought in bad faith and constitutes an abuse of the administrative proceeding."  As an administrative proceeding, the UDRP does not provide a means for an injured domain name owner such as Telepathy to be made whole, which has forced Telepathy to pursue the present action under the ACPA.

37.     Defendant's actions in the present case are precisely the type of overreaching actions that Congress cited as the reason for creation of the causes of action now asserted by Telepathy.  Indeed, Defendant and its counsel's course of conduct in pursuit of Defendant's baseless claims is far more troubling than the examples cited by Congress when creating the present causes of action.  Defendant has no more right to steal Telepathy's SDT.com domain name than the claimants' had to steal the Veronica.org domain name from little Veronica Sams or the Pokey.org domain name from little Chris "Pokey" Van Allen.

### *Defendant's Reverse Domain Name Hijacking*

38.     Notwithstanding Defendant's very recent, and baseless, claims that registration and use of the SDT.com domain name is likely to cause consumer confusion with Defendant's trademark, Defendant had numerous opportunities to acquire the SDT.com domain name over the last twenty years.  However, Defendant did not acquire the SDT.com domain name when it was available to the public prior to the first registration in 1994.  Defendant once again did not register the SDT.com domain name in 2003 when the registrant allowed the registration to lapse.  Defendant also did not acquire the SDT.com domain name at any time from 2003 to early 2006

when the owner at the time was publicly offering to sell the domain name.  Defendant also failed to purchase the SDT.com domain name when it was publicly auctioned in October of 2006.

39.     Defendant apparently did not develop an interest in the SDT.com domain name until seventeen years after the domain name was first registered and five years after Telepathy acquired the domain name.

40.     Defendant's counsel first contacted Telepathy in October of 2011 inquiring whether Telepathy would be willing to sell the SDT.com domain name to Defendant.

41.     Telepathy responded to this inquiry by asking Defendant's counsel to "confirm that your client claims no legal right to the sdt.com domain name, and I will then be able to discuss your interest in the domain."

42.     Defendant's counsel engaged in a series of emails with Telepathy where Defendant's counsel characterized Defendant's interest in the SDT.com domain name as a purely commercial interest in a potential business transaction with Telepathy.

43.     The exchange of correspondence between Telepathy and Defendant culminated in Defendant's counsel's statement in November of 2011 that Defendant wished "a quick settlement of the matter and prefer[red] to avoid proceedings."

44.     Telepathy responded to Defendant by providing a detailed explanation of Telepathy's "legitimate non-infringing use of the sdt.com domain name."

45.     Defendant's counsel responded by relaying Defendant's offer to purchase the SDT.com domain name for $400.00.

46.     There was no further correspondence between Telepathy and Defendant until June of 2014 when Defendant contacted Telepathy once again and asked Telepathy to "propose an offer to transfer [SDT.com] to us."

47.     The June 2014 correspondence from Defendant was sent to a Telepathy email address configured to send an "auto-reply" email referring potential domain name purchasers to the SecuredOffers.com service to submit purchase inquiries.  This "auto-reply" email also included the following statement:  "If you believe that the value associated with one of our domains belongs exclusively to you then you may send a detailed email to legal@telepathy.com and we will refer your claim to our counsel for review."

48.     Defendant did not submit a legal claim to Telepathy, but on July 11, 2014 used the SecuredOffers.com service to make an offer to purchase the SDT.com domain name from Telepathy for $1,000.  The offer submitted by Defendant to Telepathy made the following representation and warranty:  "By submitting this offer, I confirm that neither I, nor my organization, claims a legal right to the registration of the domain listed above."

49.     Telepathy responded to the July 11 purchase solicitation with a standard email explaining the value of three-letter .com domain names and quoting a purchase price of $185,000.

50.     On October 24, 2014, Defendant filed a complaint under the UDRP with the World Intellectual Property Organization alleging *inter alia* that Telepathy registered and used the SDT.com domain name in bad faith and that Telepathy possesses no rights or legitimate interests in the domain name.

51.     Upon information and belief, Defendant provided the UDRP complaint to the domain name registrar used by Telepathy for the SDT.com domain name, Name.com, Inc., concurrently with the filing of the complaint by Defendant with the World Intellectual Property Organization.

52.     In response to Defendant's claims in the UDRP complaint, Name.com, Inc.

changed the "status code" for the domain name, thereby disabling and/or suspending the

SDT.com domain name and limiting Telepathy's lawful use of the domain name.  Name.com's

disabling and/or suspending of the SDT.com domain name in response to Defendant's claims has

prevented Telepathy from using its account with Name.com to change the hosting settings for the

domain name, the registrant for the domain name, and the administrative and technical contacts

for the domain name, and from transferring ownership of the domain name.

52.	Upon information and belief, Name.com's disabling and/or suspending of the

SDT.com domain name was pursuant to Name.com's implementation of a reasonable policy

prohibiting the registration of a domain name that is identical to, confusingly similar to, or

dilutive of another's mark, and such action was taken by Name.com in response to Defendant's

knowing and material misrepresentation that the SDT.com domain name is confusingly similar

to, or dilutive of, Defendant's trademark.

54.	Defendant's UDRP complaint contained the following certification:

"Complainant certifies that the information contained in this Complaint is to the best of

Complainant's knowledge complete and accurate, that this Complaint is not being presented for

any improper purpose, such as to harass, and that the assertions in this Complaint are warranted

under these Rules and under applicable law, as it now exists or as it may be extended by a good-

faith and reasonable argument."

55.	Contrary to Defendant's certification in the UDRP complaint, Defendant's

complaint contained material omissions and misstatements of fact and law.

56.	Defendant's UDRP complaint alleges that Telepathy's "bad faith" registration and

use of the SDT.com domain name is shown by Telepathy's ownership and use of the domain

name in 2003.  This allegation is incorrect; Telepathy did not acquire the domain name until

2006.

57.     Defendant's UDRP complaint also alleges that Telepathy's "bad faith"
registration and use of the <u>SDT.com</u> domain name is shown by Telepathy's ownership and use of
the domain name in 2004.  This allegation is also incorrect; Telepathy did not acquire the domain
name until 2006.

58.     Defendant's UDRP complaint further alleges that Telepathy's "bad faith"
registration and use of the <u>SDT.com</u> domain name is shown by Telepathy's ownership and use of
the domain name in 2005.  Once again, this allegation is incorrect; Telepathy did not acquire the
domain name until 2006.

59.      Defendant's UDRP complaint includes exhibits from the domain name research
site DomainTools.com.  DomainTools.com records unequivocally show that Telepathy was not
the registrant of the <u>SDT.com</u> domain name until late 2006.  Given Defendant's access to and
use of DomainTools.com records, Defendant's misrepresentations appear to be deliberate.

60.     Defendant's UDRP complaint contains the material omission of any reference to
Defendant's prior representation and warranty that Defendant claimed no legal rights in the
<u>SDT.com</u> domain name.

61.     Defendant included as an exhibit to its UDRP complaint an email from Telepathy
offering to sell the domain name to Defendant, which Defendant argues establishes Telepathy's
bad faith registration and use of the <u>SDT.com</u> domain name.  The email correspondence chain
includes Defendant's representation and warranty of no legal claim to the <u>SDT.com</u> domain
name—showing Defendant and its counsel's knowledge of such representation and warranty by
Defendant.

62.     Defendant's UDRP complaint misrepresents Telepathy's clearly generic sales

language in 2014 as purported evidence of Telepathy's bad faith when acquiring the SDT.com domain name many years prior to the correspondence.

63.     Defendant's UDRP complaint contains the material omission of any reference to Telepathy's detailed exchange with Defendant's counsel in 2011 and the detailed explanation contained therein of Telepathy's rights and legitimate interests in the SDT.com domain name.

64.     In addition, Defendant's UDRP complaint alleges that Telepathy was involved in a "dozen of complaints filed with the WIPO Arbitration and Mediation Center between 2001 and 2012 where Telepathy is the Respondent," but Defendant's exhibit of the purported "dozen" cases actually lists only nine cases.  Furthermore, the complaint contains the material omission that Telepathy was found to have not engaged in cybersquatting in eight out of the nine UDRP rulings and Telepathy pursued litigation to overturn the one outlier decision.

65.     Although the UDRP requires establishment of both bad faith registration and bad faith use of the domain name, Defendant's UDRP complaint materially omits that Telepathy has never used the SDT.com domain name to display content related in any way to Defendant or its products.

66.     This is not the first instance of Defendant's counsel's assertion of baseless claims for cybersquatting.  In one UDRP ruling from 2010, a UDRP Panelist noted that Defendant's counsel "has misled the Panel in its description of the facts" and the Panelist noted that Defendant's counsel's material omissions "cannot be squared with Complainant's certification, required by paragraph 3(b)(xiv) of the Rules, that 'that the information contained in this Complaint is to the best of Complainant's knowledge complete and accurate.'"  The Panelist concluded by finding that "Such conduct deserves the limited censure available to the Panel under the Policy and the Rules, if only to deter similar conduct in future. I would include a

finding in the Panel's opinion that the Complaint was brought in bad faith and is an abuse of this administrative proceeding."

67.     Less than a year after the aforementioned decision, Defendant's counsel was again found to have "attempt[ed] to mislead the Panel."  The UDRP Panel ruled that Defendant's Counsel "brought two cases under the Policy within a year in which there is a real prospect that it has either deliberately sought to mislead the panel or has been inexcusably careless in the manner in which it has pled its client's case. **<u>The Panel is unanimous that this deserves censure</u>**" (emphasis added).  Defendant's counsel was censured, in part, for failing to investigate and address in the complaint the domain name owner's pre-filing correspondence calling into question the complainant's allegations.

68.     Undeterred by the prior UDRP decisions finding reverse domain name hijacking and censuring Defendant's counsel, Defendant filed the UDRP complaint in the present case seeking a transfer of the <u>SDT.com</u> domain name from Telepathy to Defendant based on Defendant's blatant and material omissions and misstatements of fact and law.

69.     Prior to the filing of this action, the President of Telepathy wrote to the Managing Director of Defendant, once again explained Telepathy's rights and legitimate interests in the <u>SDT.com</u> domain name and absence of bad faith, provided Defendant with the aforementioned information regarding Defendant's counsel's misconduct in UDRP proceedings, and invited Defendant to withdraw the UDRP complaint filing.  Unfortunately, to date, Defendant has not withdrawn the UDRP complaint.

**COUNT I**
**DECLARATORY JUDGMENT**
**(28 U.S.C. § 2201 and 2202)**

70.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

71.     Defendant has asserted that Telepathy registered and used the SDT.com domain name in bad faith and without any rights or legitimate interests in the domain name.

72.     Defendant has asserted that Telepathy's ownership of the SDT.com domain name is likely to cause confusion among Defendant's consumers and the consuming public.

73.     The SDT.com domain name was not registered and used by Telepathy in bad faith, Telepathy possesses rights and legitimate interests in the domain name, and Telepathy is entitled to a declaration that it did not violate the Anticybersquatting Consumer Protection Act.

74.     Defendant's claims against Telepathy constitute reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act.

75.     An actual and justiciable controversy exists between Defendant and Telepathy and Telepathy is entitled to a declaratory judgment that Defendant has violated the Anticybersquatting Consumer Protection Act and that Telepathy has not violated the Anticybersquatting Consumer Protection Act.

76.     Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover actual and/or statutory damages and attorney's fees and costs.

**COUNT II**
**NO BAD FAITH INTENT/CYBERPIRACY**
**(15 U.S.C. §§ 1114(2)(D)(v), 1125(d)(1)(B)(ii))**

77.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

78.     The actions described above evidence the absence of bad faith, within the meaning of Anticybersquatting Consumer Protection Act, by Telepathy as owner of the SDT.com domain name registration.

79.     The actions described above evidence Telepathy's bona fide offering of goods or services on a site accessible under the SDT.com domain name.

80.     The actions described above evidence a belief by Telepathy that the registration and use of the SDT.com domain name was a fair use or otherwise lawful.

81.     The actions described above evidence reasonable grounds for belief by Telepathy that the registration and use of the SDT.com domain name was a fair use or otherwise lawful.

82.     Telepathy is entitled to a judgment of no bad faith intent in the registration or use of the SDT.com domain name.

83.     Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover actual and/or statutory damages and attorney's fees and costs.

**COUNT III**
**REVERSE DOMAIN NAME HIJACKING**
**(15 U.S.C. § 1114(2)(D)(iv))**

84.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

85.     A cursory review of the UDRP and/or ACPA, and a basic investigation of SDT.com, should have made it clear to Defendant that Telepathy's registration and use of SDT.com is entirely proper and lawful.

86.     Defendant's UDRP filing represents a knowing and material misrepresentation that the SDT.com domain name is a bad faith use of the Defendant's trademark.

87.     Defendant's UDRP filing represents a knowing and material misrepresentation that the SDT.com domain name is identical to, confusingly similar to, or dilutive of a mark.

88.     Defendant's UDRP filing and communications to Telepathy's domain name registrar caused the registrar to disable and/or suspend the SDT.com domain name thereby limiting Telepathy's lawful use of the domain name.

89.     The above acts by Defendant constitute reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1114(2)(D)(iv).

90.     The foregoing actions of Defendant have been knowing, deliberate, willful.

91.     Telepathy is entitled to a judgment that Defendant's actions violate the Anticybersquatting Consumer Protection Act.

92.     Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover actual and/or statutory damages and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Telepathy respectfully requests that the Court:

1.     Enter judgment on its behalf against Defendant on all counts;

2.     Enter an order finding an absence of bad faith, within the meaning of Anticybersquatting Consumer Protection Act, by Telepathy;

3.     Enter an order finding that Defendant made a knowing and material misrepresentation that the SDT.com domain name is a bad faith use of Defendant's trademark;

4.     Enter an order finding that Defendant made a knowing and material misrepresentation that the SDT.com domain name is identical to, confusingly similar to, or dilutive of a mark;

5.     Enter an order finding the Defendant engaged in reverse domain name

hijacking in violation of the Anticybersquatting Consumer Protection Act;

6.      Enter an order enjoining Defendant from any and all further efforts to force Telepathy to transfer the SDT.com domain name to Defendant;

7.      Enter an order directing Defendant to withdraw the UDRP complaint filed with WIPO seeking a transfer of the SDT.com domain name from Telepathy to Defendant;

8.      Enter an order directing Name.com to lift the disabling and/or suspension of Telepathy's SDT.com domain name;

9.      Enter an award of $100,000.00 in statutory damages against Defendant pursuant to 15 U.S.C. § 1117(d);

10.      Enter an award of Telepathy's damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1114(2)(D)(iv);

11.      Enter an order finding the case to be exceptional and awarding Telepathy its reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a); and

12.      Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

Dated: November 13, 2014          By:      _____

Attison L. Barnes, III (DC Bar No. 427754)
David E. Weslow (DC Bar No. 480713)
WILEY REIN LLP
1776 K St. NW
Washington, DC 20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)
abarnes@wileyrein.com
dweslow@wileyrein.com

*Counsel for Telepathy, Inc.*

## VERIFICATION

I, Nat Cohen, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I am the President of Telepathy, Inc. and the facts contained in the foregoing verified complaint are true and correct.

_____
Nat Cohen, President

Nov 12, 2014
_____
Date

13802564.1