## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TELEPATHY, INC.,

     Plaintiff,

v.

SDT INTERNATIONAL SA-NV,

     Defendant.

Case no. 1:14-cv-01912-BAH

## FIRST AMENDED VERIFIED COMPLAINT

Plaintiff, Telepathy, Inc., for its First Amended Verified Complaint against defendant SDT International SA-NV alleges:

## NATURE OF THE SUIT

1.     This action arises from a growing and unfortunate trend of non-U.S. based companies seeking to steal the intellectual property of U.S. based companies through the assertion of spurious cybersquatting claims.

2.     Plaintiff seeks actual, statutory and/or punitive damages, attorney's fees and costs, a declaration of the parties' rights, a finding of Plaintiff's lack of bad faith intent under the Anticybersquatting Consumer Protection Act, a finding that Defendant engaged in reverse domain name hijacking under the Anticybersquatting Consumer Protection Act, and a finding that Defendant engaged in fraud, negligent misrepresentation, and breach of contract.

## PARTIES

3.     Telepathy, Inc. ("Telepathy" or "Plaintiff") is a corporation organized and existing under the laws of Washington, D.C. with a principal business address of P.O. Box 11077, Washington, D.C. 20008.

4.     On information and belief, SDT International SA-NV ("Defendant") is a foreign corporation with its principal place of business at Boulevard de l'Humanité 415 - 1190 Brussels - Belgium.

## JURISDICTION AND VENUE

5.     This is a civil action arising under the Lanham Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended.  This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1338(a) (any act of Congress relating to patents, copyrights and trademarks); 28 U.S.C. § 1367 (supplemental jurisdiction); the doctrines of ancillary and pendent jurisdiction; and pursuant to 28 U.S.C. § 1332 (diversity of citizenship) in that there is complete diversity of citizenship between Telepathy and the Defendant and the amount in controversy exceeds $75,000.00.

6.     Defendant engaged in negotiations and communications with Telepathy pursuing a business relationship with Telepathy, which was followed by Defendant entering into a contract providing a representation regarding Telepathy's domain name that "neither I, nor my organization, claims a legal right to the registration of the domain name."  Defendant's actions, including breach of the aforementioned representation and warranty, caused injury to Telepathy within this District.  Defendant has purposely directed its activities at this District, including entering into a contract with a DC based entity and sending threatening correspondence to Telepathy, such actions were intentional, expressly aimed at the District, and have caused harm to Telepathy in this District which Defendant knew or should have known would be suffered in this District.

7.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because the injury to Telepathy giving rise to the claims in this action occurred in this District and pursuant to 28 U.S.C. § 1391(c) because Defendant is subject to this Court's personal jurisdiction.

2

## FACTUAL BACKGROUND

### *Plaintiff and its Business*

8.        Telepathy is a DC-based e-commerce corporation that has been in business for

15 years.

9.        Telepathy often registers or acquires domain names, including apparently

generic terms, common words, initialisms, acronyms, and short phrases, and uses the domain

names to provide information to consumers on the Internet concerning the generic or plain-

meaning connotation of the terms.  Where the terms have no generic or plain meaning, the

domain names are typically used to provide an Internet search function or general information.

Telepathy owns over 10,000 such domain names.

10.        By 2003, Telepathy owned hundreds of three-letter .com domain names and

was actively seeking to acquire additional three-letter .com domain names.  As part of this effort,

Telepathy researched the expiration dates of currently registered three-letter .com domains.  In

March 2003, Telepathy became aware that the current registrant of SDT.com had not renewed

the domain, the registration of SDT.com would likely soon be cancelled, and the domain would

then become freely available to the public for re-registration on a first-come, first-served basis.

11.        Telepathy did not acquire the SDT.com domain name in July 2003 because a

third-party was the first to register the domain name upon cancellation of the prior registration.

Telepathy continued its pursuit of other three-letter .com domain names.

12.        In September 2006, Telepathy negotiated with the owner of the SDT.com

domain name at that time for purchase of the domain name as one of a group of three-letter .com

domain names.  Telepathy and the owner did not agree on the terms of sale and so Telepathy did

not acquire the SDT.com domain name at that time.

13.        In October 2006, the SDT.com domain name was publicly listed for auction at

an industry conference, the T.R.A.F.F.I.C. Domain Conference & Expo, but was not sold.

14.     Telepathy acquired the SDT.com domain name in November of 2006 together with other three-letter and/or generic domain names including, for example, IJV.com and DiamondState.com.

15.     Telepathy acquired the domain names due to the inherent value of three-letter and generic .com domain names.

16.     Since the date of Telepathy's acquisition of the SDT.com domain name in November of 2006, the SDT.com domain name has been used to redirect visitors to SearchFusion.com, which is a bona fide offering of services to Internet consumers.

17.     SearchFusion.com is an Internet search engine owned and operated by Telepathy, which provides a clean and simple search function with no links from the initial webpage.  SearchFusion is a registered trademark of Telepathy and is registered on the Principal Register of the United States Patent and Trademark Office under incontestable Registration No. 3476486.

18.     Telepathy has never configured the SDT.com domain name to display a website that suggests that the site is operated by or affiliated with Defendant.

19.     Telepathy has never configured the SDT.com domain name to display a website with products or services related to "ultrasonic measurement technology" such as those products provided by Defendant.

20.     Telepathy did not have at the time of registration, and does not now have, an intent to divert consumers from Defendant's online location to a website that could harm Defendant's goodwill represented by Defendant's trademark.

21.     At no time did Telepathy approach Defendant seeking to sell the SDT.com

domain name to Defendant.

22.     Telepathy owns no other SDT formative domain names.

23.     Since the date of Telepathy's acquisition of the SDT.com domain name in November of 2006, the SDT.com domain name registration has at all times reflected accurate contact information identifying Telepathy as the owner of the domain name.

24.     Defendant is not the exclusive owner of the letter combination "SDT" throughout the world, nor is "SDT" exclusively associated with Defendant.

25.     A Google search for "SDT," excluding any reference to "ultrasound," produces over 16,000,000 results.

26.     Defendant's SDT trademark is not famous within the meaning of the Lanham Act and is not highly distinctive given that the trademark is comprised of merely a combination of three letters that is frequently used by third-parties around the world.

27.     Telepathy has been a respondent in six proceedings under the Uniform Domain Name Dispute Resolution Policy ("UDRP") involving three letter .com domain names. Telepathy prevailed in all six proceedings, and the respective UDRP panelists found that Telepathy's business practices did not infringe the rights of the complainants.  Telepathy has reasonably relied on these decisions to continue its business practice of registering and using three-letter .com domains.

28.     Telepathy had, and continues to have, reasonable grounds to believe that the registration and use of the SDT.com domain name was a fair use or otherwise lawful.

29.     Telepathy neither registered nor used the SDT.com domain name with bad faith intent to profit from the Defendant's trademark.

***Background on the Anticybersquatting Consumer Protection Act***

30.      The Anticybersquatting Consumer Protection Act (the "ACPA") was passed into law in 1999 to address the serious problem of cybersquatting, which is the registration, trafficking in, or use of a domain name with a bad faith intent to profit from a trademark that is identical or confusingly similar to the domain name.

31.      Around the same time period, the Internet Corporation for Assigned Names and Numbers ("ICANN") promulgated the UDRP to provide an administrative remedy, dictated by contract, to also address cybersquatting.

32.      The ACPA was developed to address "'cybersquatters' or 'cyberpirates,' who abuse the rights of trademark holders by purposely and maliciously registering as a domain name the trademark name of another company to divert and confuse customers" (106 Cong. Rec., S10517).

33.      Similarly, the UDRP was developed to address the "deliberate, bad faith registration as domain names of well-known and other trademarks" (WIPO Final Report, Par. 23 (1999)).

34.      The ACPA and the UDRP include a requirement of bad faith.

"Good faith, innocent or negligent uses of a domain name that is identical or confusingly similar to another's mark or dilutive of a famous mark **are not covered by the legislation's prohibition**.  Thus, registering a domain name while unaware that the name is another's trademark would not be actionable."
106 Cong. Rec., S10518.

35.      When drafting the ACPA, Congress was concerned that overreaching cybersquatting claims could be asserted to take a domain name from a registrant that did not possess the bad faith specifically required under the ACPA and administrative policies such as

the UDRP.   The Congressional Record for the ACPA is replete with specific examples of overreaching cybersquatting claims such as claims asserted against "two year old Veronica Sam's 'Little Veronica' website and 12 year old Chris 'Pokey' Van Allen's web page."  106 Cong. Rec., S9755.

36.     In light of the potential for such overreaching claims, Congress provided domain name owners with causes of action to determine that they have not violated the ACPA, and to award damages, attorney's fees, and injunctive relief in cases of reverse domain name hijacking.

37.     Similar to the ACPA, the UDRP also provides for findings of reverse domain name hijacking where "the complaint was brought in bad faith and constitutes an abuse of the administrative proceeding."  As an administrative proceeding, the UDRP does not provide a means for an injured domain name owner such as Telepathy to be made whole, which has forced Telepathy to pursue the present action under the ACPA.

38.     Defendant's actions in the present case are precisely the type of overreaching actions that Congress cited as the reason for creation of the causes of action now asserted by Telepathy.  Indeed, Defendant and its counsel's course of conduct in pursuit of Defendant's baseless claims is far more troubling than the examples cited by Congress when creating the present causes of action.  Defendant has no more right to steal Telepathy's SDT.com domain name than the claimants' had to steal the Veronica.org domain name from little Veronica Sams or the Pokey.org domain name from little Chris "Pokey" Van Allen.

### *Background on Defendant*
### *and Defendant's Reverse Domain Name Hijacking*

39.     Defendant claims to be the world's leading manufacturer of measuring instruments using ultrasonic and other technologies.

40.     Defendant's products are sold throughout the United States including, on

information and belief, in this District.

41.     Defendant conducts live training sessions for its products throughout the United States including, for example, in Baltimore, MD, Charlotte, NC, Knoxville, TN, Louisville, KY, Milwaukee, WI, Tulsa, OK, Lansing, MI, Columbus, OH, Pittsburgh, PA, and Fort Wayne, IN.

42.     Defendant has availed itself of the services of the United States Patent and Trademark Office to register its intellectual property rights.

43.     On information and belief, Defendant has employees and/or agents throughout the United States.

44.     Defendant has an operating division and/or related entity known as "SDT North America" to exploit the U.S. marketplace including, on information and belief, sales within the District, and uses U.S. specific Internet domain names for such purposes including SDTus.com, SDThearmore.us, and ihearmore.us.

45.     Defendant operates an online interactive website targeted at U.S. consumers, including consumers within the District, providing product information and support, tutorials, training registrations, and advertisements for Defendant's products.

46.     Notwithstanding Defendant's very recent, and baseless, claims that registration and use of the SDT.com domain name is likely to cause consumer confusion with Defendant's trademark, Defendant had numerous opportunities to acquire the SDT.com domain name over the last twenty years.  However, Defendant did not acquire the SDT.com domain name when it was available to the public prior to the first registration in 1994.  Defendant once again did not register the SDT.com domain name in 2003 when the registrant allowed the registration to lapse. Defendant also did not acquire the SDT.com domain name at any time from 2003 to early 2006 when the owner at the time was publicly offering to sell the domain name.  Defendant also failed

to purchase the SDT.com domain name when it was publicly auctioned in October of 2006.

47.     Defendant apparently did not develop an interest in the SDT.com domain name until seventeen years after the domain name was first registered and five years after Telepathy acquired the domain name.

48.     Defendant first contacted Telepathy in October of 2011 by obtaining Telepathy's Washington, DC contact information from the Whois ownership records for the SDT.com domain name.

49.     Telepathy responded to this inquiry by asking Defendant's counsel to "confirm that your client claims no legal right to the sdt.com domain name, and I will then be able to discuss your interest in the domain."

50.     Defendant engaged in a series of emails with Telepathy where Defendant characterized Defendant's interest in the SDT.com domain name as a purely commercial interest in a potential business transaction with Telepathy.

51.     The exchange of correspondence between Telepathy and Defendant culminated in Defendant's statement in November of 2011 that Defendant wished "a quick settlement of the matter and prefer[red] to avoid proceedings."

52.     Telepathy responded to Defendant by providing a detailed explanation of Telepathy's "legitimate non-infringing use of the sdt.com domain name."

53.     Defendant responded by relaying Defendant's offer to purchase the SDT.com domain name for $400.00.

54.     There was no further correspondence between Telepathy and Defendant until June of 2014 when Defendant contacted Telepathy once again and asked Telepathy to "propose an offer to transfer [SDT.com] to us."

55.     The June 2014 correspondence from Defendant was sent to a Telepathy email address configured to send an "auto-reply" email referring potential domain name purchasers to the SecuredOffers.com service to submit purchase inquiries.  This "auto-reply" email also included the following statement:  "If you believe that the value associated with one of our domains belongs exclusively to you then you may send a detailed email to legal@telepathy.com and we will refer your claim to our counsel for review."

56.     Defendant did not submit a legal claim to Telepathy, but on July 11, 2014 Defendant used the SecuredOffers.com service to make an offer to purchase the SDT.com domain name from Telepathy for $1,000.

57.     Defendant used the SecuredOffers.com service to enter into a contract by providing contact information, payment of $19.00, and affirmatively selecting two boxes agreeing to be bound by the SecuredOffers.com service and the following representation and warranty:  "By submitting this offer, I confirm that neither I, nor my organization, claims a legal right to the registration of the domain listed above."

58.     Telepathy was an intended beneficiary of the representation and warranty as shown by *inter alia* the fact that the representation and warranty language referred to Telepathy's SDT.com domain name for which Defendant was paying to make a purchase offer.

59.     Given Defendant's prior efforts to purchase the SDT.com domain name from Telepathy, and Defendant's prior legal threats to Telepathy, Telepathy required Defendant to enter into the aforementioned contract before engaging in further negotiations with Defendant due to Telepathy's concern that Defendant would seek to use the substance of such negotiations in furtherance of a baseless claim of cybersquatting.

60.     In exchange for the representation and warranty, and payment, Defendant was

provided with the ability to make an offer to purchase the <u>SDT.com</u> domain name from Telepathy and, in reliance on the representation and warranty, Telepathy responded to the July 11 purchase solicitation with a standard email explaining the value of three-letter .com domain names and quoting a purchase price of $185,000.

61.    Defendant knowingly and willfully misrepresented its claim to Telepathy's <u>SDT.com</u> domain name for the purpose of inducing Telepathy to make a sales offer for the domain name that Defendant intended to use to support its baseless cybersquatting claim against Telepathy.

62.    Defendant's misrepresentation and breach of the contract became apparent when, on October 24, 2014, Defendant filed a complaint under the UDRP with the World Intellectual Property Organization alleging *inter alia* that Telepathy registered and used the <u>SDT.com</u> domain name in bad faith and that Telepathy possesses no rights or legitimate interests in the domain name.

63.    Upon information and belief, Defendant provided the UDRP complaint to the domain name registrar used by Telepathy for the SDT.com domain name, Name.com, Inc., concurrently with the filing of the complaint by Defendant with the World Intellectual Property Organization.

64.    In response to Defendant's claims in the UDRP complaint, Name.com, Inc. changed the "status code" for the domain name, thereby disabling and/or suspending the <u>SDT.com</u> domain name and limiting Telepathy's lawful use of the domain name.  Name.com's disabling and/or suspending of the <u>SDT.com</u> domain name in response to Defendant's claims has prevented Telepathy from using its account with Name.com to change the hosting settings for the domain name, the registrant for the domain name, and the administrative and technical contacts

for the domain name, and from transferring ownership of the domain name.

65.     Upon information and belief, Name.com's disabling and/or suspending of the SDT.com domain name was pursuant to Name.com's implementation of a reasonable policy prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark, and such action was taken by Name.com in response to Defendant's knowing and material misrepresentation that the SDT.com domain name is confusingly similar to, or dilutive of, Defendant's trademark.

66.     Defendant's UDRP complaint contained the following certification: "Complainant certifies that the information contained in this Complaint is to the best of Complainant's knowledge complete and accurate, that this Complaint is not being presented for any improper purpose, such as to harass, and that the assertions in this Complaint are warranted under these Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument."

67.     Contrary to Defendant's certification in the UDRP complaint, Defendant's complaint contained material omissions and misstatements of fact and law.

68.     Defendant's UDRP complaint alleges that Telepathy's "bad faith" registration and use of the SDT.com domain name is shown by Telepathy's ownership and use of the domain name in 2003.  This allegation is incorrect; Telepathy did not acquire the domain name until 2006.

69.     Defendant's UDRP complaint also alleges that Telepathy's "bad faith" registration and use of the SDT.com domain name is shown by Telepathy's ownership and use of the domain name in 2004.  This allegation is also incorrect; Telepathy did not acquire the domain name until 2006.

70.     Defendant's UDRP complaint further alleges that Telepathy's "bad faith" registration and use of the SDT.com domain name is shown by Telepathy's ownership and use of the domain name in 2005.  Once again, this allegation is incorrect; Telepathy did not acquire the domain name until 2006.

71.      Defendant's UDRP complaint includes exhibits from the domain name research site DomainTools.com.  DomainTools.com records unequivocally show that Telepathy was not the registrant of the SDT.com domain name until late 2006.  Given Defendant's access to and use of DomainTools.com records, Defendant's misrepresentations appear to be deliberate.

72.     Defendant's UDRP complaint contains the material omission of any reference to Defendant's prior representation and warranty that Defendant claimed no legal rights in the SDT.com domain name.

73.     Defendant included as an exhibit to its UDRP complaint an email from Telepathy offering to sell the domain name to Defendant, which Defendant argues establishes Telepathy's bad faith registration and use of the SDT.com domain name.  The email correspondence chain includes Defendant's representation and warranty of no legal claim to the SDT.com domain name—showing Defendant's knowledge of such representation and warranty by Defendant.

74.     Defendant's UDRP complaint misrepresents Telepathy's clearly generic sales language in 2014 as purported evidence of Telepathy's bad faith when acquiring the SDT.com domain name many years prior to the correspondence.

75.     Defendant's UDRP complaint contains the material omission of any reference to Telepathy's detailed exchange with Defendant's counsel in 2011 and the detailed explanation contained therein of Telepathy's rights and legitimate interests in the SDT.com domain name.

76.     In addition, Defendant's UDRP complaint alleges that Telepathy was involved in

a "dozen of complaints filed with the WIPO Arbitration and Mediation Center between 2001 and

2012 where Telepathy is the Respondent," but Defendant's exhibit of the purported "dozen"

cases actually lists only nine cases.  Furthermore, the complaint contains the material omission

that Telepathy was found to have not engaged in cybersquatting in eight out of the nine UDRP

rulings and Telepathy pursued litigation to overturn the one outlier decision.

77.     Although the UDRP requires establishment of both bad faith registration and bad

faith use of the domain name, Defendant's UDRP complaint materially omits that Telepathy has

never used the SDT.com domain name to display content related in any way to Defendant or its

products.

78.     This is not the first instance of Defendant's counsel's assertion of baseless claims

for cybersquatting.  In one UDRP ruling from 2010, a UDRP Panelist noted that Defendant's

counsel "has misled the Panel in its description of the facts" and the Panelist noted that

Defendant's counsel's material omissions "cannot be squared with Complainant's certification,

required by paragraph 3(b)(xiv) of the Rules, that 'that the information contained in this

Complaint is to the best of Complainant's knowledge complete and accurate.'"  The Panelist

concluded by finding that "Such conduct deserves the limited censure available to the Panel

under the Policy and the Rules, if only to deter similar conduct in future. I would include a

finding in the Panel's opinion that the Complaint was brought in bad faith and is an abuse of this

administrative proceeding."

79.     Less than a year after the aforementioned decision, Defendant's counsel was

again found to have "attempt[ed] to mislead the Panel."  The UDRP Panel ruled that Defendant's

Counsel "brought two cases under the Policy within a year in which there is a real prospect that it

has either deliberately sought to mislead the panel or has been inexcusably careless in the

manner in which it has pled its client's case. **The Panel is unanimous that this deserves**

**censure**" (emphasis added).  Defendant's counsel was censured, in part, for failing to investigate

and address in the complaint the domain name owner's pre-filing correspondence calling into

question the complainant's allegations.

80.     Undeterred by the prior UDRP decisions finding reverse domain name hijacking

and censuring Defendant's counsel, Defendant filed the UDRP complaint in the present case

seeking a transfer of the SDT.com domain name from Telepathy to Defendant based on

Defendant's blatant and material omissions and misstatements of fact and law.

81.     Prior to the filing of this action, the President of Telepathy wrote to the Managing

Director of Defendant, once again explained Telepathy's rights and legitimate interests in the

SDT.com domain name and absence of bad faith, provided Defendant with the aforementioned

information regarding Defendant's counsel's misconduct in UDRP proceedings, and invited

Defendant to withdraw the UDRP complaint filing.

82.     Subsequent to the filing of this action, a three-member panel of the World

Intellectual Property Organization (WIPO) issued a ruling dismissing Defendant's UDRP

Complaint.

83.     One of the three members of the WIPO panel issued a dissent from the

termination of the proceeding on grounds that "On the papers before the Panel I would have

dismissed the Complaint **and** found the Complainant guilty of Reverse Domain Name

Hijacking" (emphasis added).

84.     The panelist further found:

"In this case the Complaint is fundamentally defective in that there is no evidence
of any substance to support the claim to bad faith registration and use."

"In my view, the Complaint was fundamentally defective, the certification at the

end of the Complaint that to the best of the Complainant's knowledge the Complaint was complete and accurate was false and the Complaint should never have been filed."

"In my view this is a clear case of Reverse Domain Name Hijacking."

"Having found that the Complaint was brought in bad faith Paragraph 15(e) requires the panel to so declare, irrespective of whether the Complaint is terminated or suspended."

## COUNT I
## DECLARATORY JUDGMENT
### (28 U.S.C. § 2201 and 2202)

85.    Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

86.    Defendant has asserted that Telepathy registered and used the SDT.com domain name in bad faith and without any rights or legitimate interests in the domain name.

87.    Defendant has asserted that Telepathy's ownership of the SDT.com domain name is likely to cause confusion among Defendant's consumers and the consuming public.

88.    The SDT.com domain name was not registered and used by Telepathy in bad faith, Telepathy possesses rights and legitimate interests in the domain name, and Telepathy is entitled to a declaration that it did not violate the Anticybersquatting Consumer Protection Act.

89.    Defendant's claims against Telepathy constitute reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act.

90.    An actual and justiciable controversy exists between Defendant and Telepathy and Telepathy is entitled to a declaratory judgment that Defendant has violated the Anticybersquatting Consumer Protection Act and that Telepathy has not violated the Anticybersquatting Consumer Protection Act.

91.    Defendant's conduct has harmed and will continue to harm Telepathy, thereby

entitling Telepathy to recover actual and/or statutory damages and attorney's fees and costs.

## COUNT II
## NO BAD FAITH INTENT/CYBERPIRACY
### (15 U.S.C. §§ 1114(2)(D)(v), 1125(d)(1)(B)(ii))

92.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

93.     The actions described above evidence the absence of bad faith, within the meaning of Anticybersquatting Consumer Protection Act, by Telepathy as owner of the SDT.com domain name registration.

94.     The actions described above evidence Telepathy's bona fide offering of goods or services on a site accessible under the SDT.com domain name.

95.     The actions described above evidence a belief by Telepathy that the registration and use of the SDT.com domain name was a fair use or otherwise lawful.

96.     The actions described above evidence reasonable grounds for belief by Telepathy that the registration and use of the SDT.com domain name was a fair use or otherwise lawful.

97.     Telepathy is entitled to a judgment of no bad faith intent in the registration or use of the SDT.com domain name.

98.     Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover actual and/or statutory damages and attorney's fees and costs.

## COUNT III
## REVERSE DOMAIN NAME HIJACKING
### (15 U.S.C. § 1114(2)(D)(iv))

99.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

17

100.     A cursory review of the UDRP and/or ACPA, and a basic investigation of SDT.com, should have made it clear to Defendant that Telepathy's registration and use of SDT.com is entirely proper and lawful.

101.     Defendant's UDRP filing represents a knowing and material misrepresentation that the SDT.com domain name is a bad faith use of the Defendant's trademark.

102.     Defendant's UDRP filing represents a knowing and material misrepresentation that the SDT.com domain name is identical to, confusingly similar to, or dilutive of a mark.

103.     Defendant's UDRP filing and communications to Telepathy's domain name registrar caused the registrar to disable and/or suspend the SDT.com domain name thereby limiting Telepathy's lawful use of the domain name.

104.     The above acts by Defendant constitute reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1114(2)(D)(iv).

105.     The foregoing actions of Defendant have been knowing, deliberate, and willful.

106.     Telepathy is entitled to a judgment that Defendant's actions violate the Anticybersquatting Consumer Protection Act.

107.     Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover actual and/or statutory damages and attorney's fees and costs.

## COUNT IV
## BREACH OF CONTRACT

108.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

109.     Defendant entered into a contract through the SecuredOffers.com service and the circumstances surrounding the formation of the contract identify Telepathy as a beneficiary of the contract.

18

110.   Telepathy directed Defendant to the SecuredOffers.com service, and the terms of the contract that Defendant entered into further demonstrate that Telepathy is the intended beneficiary of the terms of the contract.

111.   Defendant breached the terms of its contract by pursuing a baseless legal claim violating the representation and warranty to Telepathy that "By submitting this offer, I confirm that neither I, nor my organization, claims a legal right to the registration of the domain listed above."

112.   Telepathy is entitled to a judgment that Defendant's actions constitute breach of contract.

113.   Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover damages.

## COUNT V
## FRAUD

114.   Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

115.   Defendant made a false representation when asserting that "By submitting this offer, I confirm that neither I, nor my organization, claims a legal right to the registration of the domain listed above."

116.   Defendant's false representation was to a material fact in that Telepathy would not have engaged in any dealings with Defendant had Defendant truthfully represented its baseless cybersquatting claim regarding the SDT.com domain name.

117.   Defendant made the false representation with knowledge of its falsity given that Defendant shortly thereafter asserted its baseless cybersquatting claim in contradiction to the representation.

118.     Defendant made the false representation with intent to deceive Telepathy and, relying on the false representation, Telepathy engaged in further discussions with Defendant which Defendant then attempted to use to support its baseless cybersquatting claim.

119.     The foregoing actions of Defendant have been knowing, deliberate, and willful.

120.     Telepathy is entitled to a judgment that Defendant's actions constitute fraud.

121.     Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover actual and/or punitive damages and attorney's fees and costs.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

122.     Telepathy realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

123.     Defendant made a false representation when asserting that "By submitting this offer, I confirm that neither I, nor my organization, claims a legal right to the registration of the domain listed above."

124.     Defendant's false representation was to a material fact in that Telepathy would not have engaged in any dealings with Defendant had Defendant truthfully represented its baseless cybersquatting claim regarding the SDT.com domain name.

125.     Defendant's false representation was in violation of Defendant's duty to excise reasonable care before making such a false, material misrepresentation.

126.     Telepathy relied to its detriment on Defendant's false representation and engaged in further discussions with Defendant.

127.     Defendant's false representation was a cause of injury to Telepathy in that Defendant used the false representation to obtain a sale offer from Telepathy for the SDT.com domain name, which Defendant then attempted to use to support its baseless cybersquatting

claim.

128.    Telepathy is entitled to a judgment that Defendant's actions constitute negligent misrepresentation.

129.    Defendant's conduct has harmed and will continue to harm Telepathy, thereby entitling Telepathy to recover actual and/or punitive damages and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Telepathy respectfully requests that the Court:

1.    Enter judgment on its behalf against Defendant on all counts;

2.    Enter an order finding an absence of bad faith, within the meaning of Anticybersquatting Consumer Protection Act, by Telepathy;

3.    Enter an order finding that Defendant made a knowing and material misrepresentation that the SDT.com domain name is a bad faith use of Defendant's trademark;

4.    Enter an order finding that Defendant made a knowing and material misrepresentation that the SDT.com domain name is identical to, confusingly similar to, or dilutive of a mark;

5.    Enter an order finding the Defendant engaged in reverse domain name hijacking in violation of the Anticybersquatting Consumer Protection Act;

6.    Enter an order enjoining Defendant from any and all further efforts to force Telepathy to transfer the SDT.com domain name to Defendant;

7.    Enter an order finding that Defendant engaged in breach of contract;

8.    Enter an order finding that Defendant engaged in fraud;

9.    Enter an order finding that Defendant engaged in negligent misrepresentation;

10.    Enter an order directing Name.com to lift the disabling and/or suspension of

Telepathy's SDT.com domain name;

11.     Enter an award of $100,000.00 in statutory damages against Defendant pursuant to 15 U.S.C. § 1117(d);

12.     Enter an award of punitive damages against Defendant for Defendant's fraud and/or negligent misrepresentation;

13.     Enter an award of Telepathy's damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1114(2)(D)(iv);

14.     Enter an order finding the case to be exceptional and awarding Telepathy its reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a); and

15.     Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.


Dated: June 15, 2015          By:     /s/ Attison L. Barnes, III /s/
                                      Attison L. Barnes, III (DC Bar No. 427754)
                                      David E. Weslow (DC Bar No. 480713)
                                      WILEY REIN LLP
                                      1776 K St. NW
                                      Washington, DC 20006
                                      (202) 719-7000 (phone)
                                      abarnes@wileyrein.com
                                      dweslow@wileyrein.com

                                      *Counsel for Telepathy, Inc.*

## VERIFICATION

I, Nat Cohen, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I am the President of Telepathy, Inc. and the facts contained in the foregoing First Amended Verified Complaint are true and correct.

_____
Nat Cohen, President

6/15/2015
_____
Date

13874002.1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of June 2015, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record for Defendant SDT International SA-NV:

> David Ludwig
> DUNLAP BENNETT & LUDWIG PLLC
> 211 Church Street, SE
> Leesburg, VA 20175
> dludwig@dbllawyers.com

> /s/ Attison L. Barnes, III /s/
> Attison L. Barnes, III (DC Bar No. 427754)
> WILEY REIN LLP
> 1776 K St. NW
> Washington, DC 20006
> (202) 719-7000 (phone)
> abarnes@wileyrein.com

> *Counsel for Plaintiff Telepathy, Inc.*